UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOSEPH PAGAN,

                                                    **Case No.:** 1:20-cv-7349 (ALC) (SDA)

                 Plaintiff,

      -against-

C.I. LOBSTER CORP., JOSEPH MANDARINO,
RICHARD MANDARINO, and JOHN MANDARINO,

                      Defendants.
-------------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION TO DISQUALIFY THE OTTINGER FIRM, P.C
## FROM REPRESENTING PLAINTIFF AND ANY OPT-IN PLAINTIFFS

**MILMAN LABUDA LAW GROUP PLLC**

Emanuel Kataev, Esq.
3000 Marcus Ave., Suite 3W8
Lake Success, NY 11042
(516) 328-8899 (office)
(516) 303-1395 (direct dial)
(516) 328-0082 (facsimile)
emanuel@mllaborlaw.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

FACTS .......................................................................................................................3

    BACKGROUND .....................................................................................................3

    THE OTTINGER FIRM ENGAGES IN IMPROPER SOLICITATIONS .........4

    PAGAN IS NOT SIMILARLY SITUATED TO OTHER EMPLOYEES
    BECAUSE HE NEVER WORKED OVERTIME ...................................................6

STANDARD OF REVIEW .........................................................................................8

ARGUMENT ..............................................................................................................9

    THE OTTINGER FIRM, P.C. SHOULD BE DISQUALIFED ............................9

    I.    DISQUALIFICATION IS WARRANTED BECAUSE
        OF ENGAGEMENT IN IMPROPER SOLICITATIONS.........................9

    II.   DISQUALIFICATION IS ALSO WARRANTED DUE TO A
        CONFLICT OF INTEREST WITH THE PLAINTIFF ...........................14

CONCLUSION.........................................................................................................16

# TABLE OF AUTHORITIES

## Cases

Armstrong v. McAlpin,
    625 F.2d 433 (2d Cir.1980)...............................................................................9

Armstrong v. McAlpin,
    449 U.S. 1106 (1981).................................................................................9

Brown v. Mustang Sally's Spirits & Grill, Inc.,
    No. 12-cv-529, 2012 WL 4764585 (W.D.N.Y. Oct. 5, 2012)...........................13

Cresswell v. Sullivan & Cromwell,
    922 F.2d 60 (2d Cir.1990)................................................................................8

Crews v. County of Nassau,
    2007 U.S. Dist. LEXIS 6572 (E.D.N.Y. Jan. 30, 2007) .................................14

Cheng v. GAF Corp.,
    631 F.2d 1052 (2d Cir. 1980)...........................................................................8

Cheng v. GAF Corp.,
    450 U.S. 903 (1981)........................................................................................8

Flores v. Willard J. Price Assocs., LLC,
    20 A.D.3d 343 (1st Dept. 2005)......................................................................14

Glueck v. Jonathan Logan, Inc.,
    653 F.2d 746 (2d Cir.1981)..............................................................................9

Galindo v State Farm Fire & Cas. Co.,
    2014 N.Y. Misc. LEXIS 1816 (Sup. Ct. Apr. 15, 2014)................................14

Gordon v. Kaleida Health,
    737 F. Supp. 2d 91 (W.D.N.Y. 2010) ............................................................11

Government of India v. Cook Industries, Inc.,
    569 F.2d 737 (2d Cir.1978)..............................................................................8

Gulf Oil Co. v. Bernard,
    452 U.S. 89 (1981).............................................................................10, 12, 13

Hempstead Video, Inc. v. Inc. Village of Valley Stream,
    409 F.3d 127 (2d Cir. 2005).............................................................................8

Hickman v. Burlington Bio–Medical Corp.,
    371 F. Supp. 2d 225 (E.D.N.Y.2005) ............................................................ 8

Hoffmann-La Roche Inc. v Sperling,
    493 US 165 (1989) ..................................................................................... 12

Hull v. Celanese Corp.,
    513 F.2d 568 (2d Cir. 1975) ......................................................................... 8

Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,
    146 F.3d 66 (2d Cir. 1998) ..................................................................... 15 n. 2

Mendez v. Enecon Northeast Applied Polymer Sys., Inc.,
    No. 14-CIV.-6736 (ADS) (AKT), 2015 WL 4249219 (E.D.N.Y. Jul. 13, 2015) ............. 12

Mitchell v. Metro. Life Ins. Co., Inc.,
    No. 01-CIV.-2112 (WHP), 2002 WL 441194 (S.D.N.Y. Mar. 21, 2002) ...................... 8-9

O'Conner v. Agilant Sols., Inc.,
    444 F. Supp. 3d 593 (S.D.N.Y. 2020) ....................................................... 10, 11

Ohralik v. Ohio State Bar Ass'n,
    436 U.S. 447 (1978) .................................................................................. 11

Pagan v. Fishbox Restaurant Corp.,
    No. 1:17-cv-9458 (KPF) (DCF) ..................................................................... 15

Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.,
    687 F. Supp. 2d 381 (S.D.N.Y. 2010) .............................................................. 9

Roddy v. Nederlander Producing Co. of America, Inc.,
    96 A.D.3d 509 (1st Dept. 2012) .................................................................... 14

Rivera v. Lutheran Medical Center,
    866 N.Y.S. 2d 520 (Sup. Ct. Kings Cty. 2008) .................................................... 9

Rivera v. Lutheran Medical Center,
    73 A.D.3d 891 (2d Dept. 2010) ..................................................................... 9

Scott v. Chipotle Mexican Grill, Inc.,
    No. 12-cv-08333, 2014 WL 4852063 (S.D.N.Y. Sept. 29, 2014) ................................ 11

Shapero v. Ky. Bar Ass'n,
    486 U.S. 466 (1988) .............................................................................. 11-12

Shibetti v Z Rest., Diner and Lounge, Inc.,
        No. 18-CIV.-856 (BMC), 2021 WL 1738315 (E.D.N.Y. May 3, 2021) ................ 9, 10-13

Tufamerica, Inc. v. Codigo Music LLC,
        2013 U.S. Dist. LEXIS 65777 (S.D.N.Y. May 7, 2013)..................................................... 8

Zamboni v. Pepe W. 48th St. LLC,
        No. 12-cv-3157, 2013 WL 978935 (S.D.N.Y. March 12, 2013) ...................................... 11

Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio,
        471 U.S. 626 (1985)......................................................................................................... 12

**Rules**

Fed. R. Civ. P. 12 ...................................................................................................................... 3

Local Civil Rule 1.5 ........................................................................................... 8 n. 1, 11

Rule 7.3 of the American Bar Association's Model Rules of Professional Conduct.................... 12

Rule 1.4 of the New York Rules of Professional Conduct ..................................................... 14, 15

Rule 1.7 of the New York Rules of Professional Conduct ..................................................... 14, 15

Rule 7.3 of the New York Rules of Professional Conduct ................................................. 9, 11, 12

**Other Sources**

ABA Formal Op. 07-445 (2007)............................................................................................ 12, 13

## PRELIMINARY STATEMENT

Lawyers are strictly prohibited from directly or indirectly soliciting individuals to join lawsuits by in-person or telephone contact.  Improper solicitations of clients strike at the very heart of an attorney's commitment and obligation to upholding the rule of law and maintaining the honor of the profession.  Therefore, solicitations by in-person or telephone contact are prohibited unless the recipient is a close friend, relative, former client, or existing client.   The instant motion deals with such prohibited conduct.

The rule against improper solicitations is no different in collective actions under the Fair Labor Standards Act ("FLSA"), like this case.  In federal wage-and-hour litigation, a motion may be made to conditionally certify a collective action, whereby – *if* granted – an employer is *then* ordered by the Court through a court-supervised process, to provide contact information of other similarly situated employees to Plaintiff and the Court authorizes a specific notice to be sent to potential opt-in plaintiffs.  That Court-authorized notice is the only means by which non-parties may join a collective action; the collective action process does not otherwise allow unexpected, unsolicited, and random contact by a law firm with prospective opt-in plaintiffs.  To be clear, the law does not allow attorneys (nor does it permit attorneys to have their clients utilized as their agents to do what the attorney is prohibited from doing) to solicit other employees at any time, and the only permissible method to have potential opt-in plaintiffs join is by means of court-supervised and court-authorized notice upon granting a motion to conditionally certify a collective action.

Here, Plaintiff's counsel engaged in improper direct and indirect solicitations of employees of C.I. Lobster Corp. (the "Restaurant") to join the instant lawsuit; they have directly violated the New York Rules of Professional Conduct ("RPC") concerning solicitations as well as flouted the procedure by which opt-in plaintiffs may join a putative collective action.

What's worse is they have inexplicably failed to file any motion seeking to conditionally certify a collective action despite the fact that this case has been filed nearly a year ago.

As set forth below, The Ottinger Firm, P.C. (hereinafter the "Ottinger Firm") engaged in several violations of the RPC which warrants its disqualification from representing Plaintiff and any opt-in plaintiff in this case, together with other sanctions such as a monetary penalty, attorneys' fees related to the instant motion, an Order finding that they are not to collect any fees for the work performed in soliciting any opt-in plaintiffs together with any work that is fruit of the poisonous tree, as well as the issuance of a Court-authorized corrective notice to all employees of the Restaurant that the Ottinger Firm improperly contacted them, that it is not permissible for the Ottinger Firm to contact them, and that any attempts to contact them should be reported directly to the Court.

First, Ottinger Firm engaged in improper telephone solicitations of several employees in a targeted, surgical fashion that indicates the level of premeditation and forethought on the law firm's efforts to improperly secure additional plaintiffs to join their putative collective action.

Second, the Ottinger Firm has a conflict of interest with its client, Joseph Pagan, including the Ottinger Firm's solicitation of additional individuals to join this lawsuit for the Ottinger Firm's financial benefit (and to the financial detriment of Plaintiff) due to its documented unwillingness to discuss settlement absent certifying a class or collective action in this case, which is inherently against Pagan's interest due to the delay involved in class or collective action litigation and the lack of any meaningful personal benefit to Pagan in doing so.

The Ottinger Firm must therefore be disqualified and otherwise appropriately sanctioned as set forth above for violating the RPC and flouting the procedure to conditionally certify a collective action.

## **FACTS**

**Background**

Plaintiff Joseph Pagan ("Plaintiff" or "Pagan") commenced this case on September 9, 2020, and Defendants appeared by counsel on October 23, 2020. See Docket Entries 1-2, 12, 15. Prior to formally appearing in this action, on October 20, 2020, Defendants sought a settlement demand from Plaintiff, but the Ottinger Firm declined, responding:

> **"We cannot provide you with a damage calculation at this point because we don't have any information about the class. We will gather this information through the discovery or voluntary disclosure. We recently settled two cases against restaurants in NYC for 1.8M and 1.5M"**
>
> …
>
> **"No we are not going to provide damages for our client because this is a putative class action."**

See Declaration of Emanuel Kataev, Esq. (hereinafter "Kataev Decl.") at ¶ 3, Ex. A. Defendants then requested that this case be referred to mandatory mediation. See Docket Entry 13 ("… Plaintiff has indicated that he is unwilling to engage in any [settlement] discussions on the grounds that he seeks a class action in this case. Defendants respectfully submit that this is … violative of Rule 1 …, and request that this case be referred to mandatory mediation"). Though the Hon. Andrew L. Carter, U.S.D.J. initially denied this request, a mediation referral Order was issued pursuant to a standing Order. See Docket Entries 16-17.

The parties conducted a mediation on January 21, 2021, which was – not surprisingly, given the Ottinger Firm's position above – unsuccessful. See Text Only Docket Entry dated December 15, 2020; see also Kataev Decl. at ¶ 4. The Defendants provided the Ottinger Firm with Plaintiff's time and pay records, which establish that Plaintiff never worked overtime. See Id. at ¶¶ 5-6, Ex. B.

Issue was joined on March 19, 2021 following Plaintiff's voluntary withdrawal of various discrimination and retaliation claims (which render Plaintiff an individual that is not similarly situated to other employees) as a result of Defendants' letter motion for a pre-motion conference in anticipation of Defendants' motion to dismiss those claims.  See Docket Entries 22-25, 28.

On June 18, 2021, Plaintiff served Defendants with his Rule 26 disclosures.  See Kataev Decl. at ¶ 7, Ex. C.  Notably, not a single individual the Ottinger Firm improperly solicited was listed as an individual likely to have discoverable information.  Id.

**The Ottinger Firm Engages In Improper Solicitations**

Laundel Booker (hereinafter "Booker") is a server for the Restaurant and has worked there since on or about April 19, 2013.  See Declaration of Laundel Booker (hereinafter "Booker Decl.") at ¶¶ 1-2.  On March 29, 2021, at 4:26 PM, Booker received an unexpected, unsolicited, and random text message from Pagan which said **"Yo it's Joseph from lobster house.  Let's get this money.  Your gunna wanna hear this 😊 Call me at anytime so I can put you on Joseph the Puerto Rican kid not jojo dumb ass[.]"** See Booker Decl. at ¶¶ 30-31.  Booker did not respond to Plaintiff's message.  Id. at ¶ 32.  On the same date, at 5:29 PM, Booker received a voice message from Pagan's lawyer, Finn Dusenbery ("Dusenbery") of the Ottinger Firm, which said **"Yeah hi this is Finn Dusenbery, an attorney for Joseph Pagan.  Um, we represent Mr. Pagan against CI Lobster Corp.  If you could just give me a call whenever you have a chance, my number is 6074371168, 6074371168 thank you very much bye."**  Id. at ¶ 33.  Booker did not return the call from the Ottinger Firm.  Id. at ¶ 34.  A few days later, on April 1, 2021, Booker received a text message from Dusenbery, which said **"Hi, this is Finn Dusenbery, I'm an attorney for Joseph Pagan against CI Lobster Corp. If you have a chance, please call me at 607-437-1168. Thanks."** Id. at ¶¶ 35-36.  Booker ignored these messages, as well.  Id. at ¶ 37.

4

Booker continued to receive several unsolicited phone calls from Pagan and Dusenbery, all of which he did not answer.  Id. at ¶ 38.  It was clear to Booker from reviewing these messages that the purpose of them was to solicit Booker to join this lawsuit.  Id. at ¶ 39.

Christopher Baca ("Baca") is also a server for the Restaurant and has worked there since in or about May 2016.  See Declaration of Christopher Baca (hereinafter "Baca Decl.") at ¶¶ 1-2.  On March 24, 2021, at 6:36 PM, Baca received a voice message from Dusenbery, which said **"Yeah hi this is Finn Dusenbery, an attorney for Joseph Pagan.  Um, we represent Mr. Pagan against CI Lobster Corp.  If you could just give me a call whenever you have a chance, my number is 6074371168, 6074371168 thank you very much bye."** Id. at ¶ 30.  Baca also received phone calls from the Ottinger Firm on March 29, 2021 and April 1, 2021.  Id. at 32.  Baca did not return any of these calls from the Ottinger Firm.  Id. at ¶¶ 31, 33.

On April 1, 2021, Baca received a text message from Dusenbery, which said **"Hi, this is Finn Dusenbery, I'm an attorney for Joseph Pagan against CI Lobster Corp. If you have a chance, please call me at 607-437-1168.  Thanks."** Id. at ¶¶ 34-35.  Baca informed Dusenbery that he did not want to get involved in anybody's lawsuit and asked not to be contacted anymore. Id. at ¶ 36.  It was clear to Baca that Pagan and his attorneys wanted him to join their lawsuit against the Restaurant.  Id. at ¶ 37.

Booker and Baca each voluntarily provided the foregoing statements to Defendants' attorneys after being apprised of their rights.  See Booker Decl. ¶¶ 3-7; see also Baca Decl. ¶¶ 3-7 (noting that they spoke with Defendants' counsel based on an inquiry, and were told, *inter alia*, that their participation was voluntary and that there would be no rewards or reprisals).  A third witness signed a similar declaration but subsequently requested that it not be filed due to fears for his safety if Pagan learned about it.  See Kataev Decl. ¶¶ 8-9.

Booker and Baca did not appreciate the fact that Pagan and his lawyers contacted him without him requesting that they do so to get him involved in a lawsuit that he does not want to be a part of.  See Booker Decl. ¶ 47; see also Baca Decl. ¶ 45.  Neither Pagan nor his lawyers ever asked Booker any questions or otherwise sought to interview him as a witness, and it was clear to Booker, especially by Pagan's message, that the sole purpose of the contact by Pagan was for him to join the lawsuit.  Id. at ¶¶ 48-49.

It was also clear to Booker and to Baca that when Pagan's attorney contacted him, his lawyer had the same purpose: to solicit them join the lawsuit.  Id. at ¶ 50; see also Baca Decl. ¶¶ 46-47.

**Pagan is not Similarly Situated to Other Employees Because He Never Worked Overtime**

Booker and Baca each begin or began their work day at the Restaurant by clocking in before they start working, complete their shifts of approximately seven (7) to eleven (11) hours per day (depending on whether they perform a double shift, which is rare), and clock out upon completing their workday.  See Booker Decl. ¶¶ 8-14; see also Baca Decl. ¶¶ 8-14.  The time keeping system is electronic, has a camera which takes their picture every time they clock in or out, and keeps track of their weekly hours.  See Booker Decl. ¶ 15; see also Baca Decl. ¶ 15.

Both Booker and Baca receive tips and, as a result, are paid less than the minimum wage due to the tip credit.  See Booker Decl. ¶ 17; see also Baca Decl. ¶ 17.  However, the tips they earn are substantially greater than their wages.  See Booker Decl. ¶¶ 18-19; see also Baca Decl. ¶¶ 18-19.  Every week on Saturday, they receive their pay for the work performed on the prior Monday though Sunday; when they receive their pay, they also receive a pay stub which shows their hours worked, hourly wages, tips, and – if they worked a spread of ten or more hours per day – spread of hours compensation.  See Booker Decl. ¶¶ 20-21; see also Baca Decl. ¶¶ 20-21.

Neither Booker nor Baca were ever not paid for work they performed, or ever had an issue where they had to speak to management about missing pay.  See Booker Decl. ¶¶ 22-23; see also Baca Decl. ¶¶ 22-23.  In fact, they hardly work overtime hours and it is rare for them to receive it, because the Restaurant is properly managed such that no one works overtime to avoid the unnecessary expense.  See Booker Decl. ¶¶ 24-25; see also Baca Decl. ¶¶ 24-25.  Booker has not worked any overtime at all from January 2021 until June 14, 2021 and estimates that he only worked overtime two (2) to three (3) weeks in the entire year in 2019.  See Booker Decl. ¶¶ 26-28.  Similarly, Baca estimates that he earned overtime compensation for only five (5) weeks in 2019.  See Baca Decl. ¶ 27.  Booker and Baca each have no doubt they were properly paid by the Restaurant because it is a legitimate establishment that has been open for decades.  See Booker Decl. ¶ 29; see also Baca Decl. ¶ 29.

Notwithstanding the foregoing, it is puzzling to Booker and Baca how Pagan can claim he worked overtime when he frequently called out and did not work at the Restaurant full time since he had jobs elsewhere.  See Booker Decl. ¶ 41; see also Baca Decl. ¶ 39.  In fact, he never stayed a full shift and very often left early.  See Booker Decl. ¶ 42; see also Baca Decl. ¶ 40.  For example, he would start a shift at 6:00 PM and left before 11:00 PM, when Booker and Baca would frequently stay from 6:00 PM until closing and hardly ever earn overtime.  See Booker Decl. ¶¶ 43-45; see also Baca Decl. ¶ 41-43.  Pagan left early as soon as it slowed down at the restaurant, and – as a result – it is impossible for him to earn any overtime at all, since he always left early. See Booker Decl. ¶¶ 44, 46; see also Baca Decl. ¶¶ 42, 44.

Indeed, Pagan never worked overtime.  See Kataev Decl. at ¶¶ 5-6, Ex. B.  As a result, he cannot be similarly situated to any other employees that did work overtime.

## STANDARD OF REVIEW

Disqualification of an attorney is a matter which rests within the sound discretion of the court.  See Cheng v. GAF Corp., 631 F.2d 1052, 1055 (2d Cir. 1980), vacated on other grounds and remanded, 450 U.S. 903 (1981).  A federal court's power to disqualify an attorney derives from its "inherent power to 'preserve the integrity of the adversary process.'"  See Hempstead Video, Inc. v. Inc. Village of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005).  "[I]n the disqualification situation, any doubt is to be resolved in favor of disqualification.  See Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975).  Courts consider the New York RPC and the ABA Model Rules of Professional Responsibility for guidance on a motion for disqualification.  Id. at 132; see also Tufamerica, Inc. v. Codigo Music LLC, 2013 U.S. Dist. LEXIS 65777 (S.D.N.Y. May 7, 2013).[1]  Whether or not disqualification is warranted is subject to the Court's discretion.  See Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir.1990).

While "motions to disqualify are subject to a high burden of proof," Hickman v. Burlington Bio–Medical Corp., 371 F. Supp. 2d 225, 229 (E.D.N.Y.2005); see also Government of India v. Cook Industries, Inc., 569 F.2d 737, 739 (2d Cir.1978), "[u]nder the restrained approach adopted by the Second Circuit, relief will be granted only when the facts concerning the lawyer's conduct poses a significant risk of trial taint," particularly when the "'attorney is at least potentially in a position to use privileged information concerning the other side through prior representation ..., thus giving his present client an unfair advantage.'" See Mitchell v. Metro. Life Ins. Co., Inc., No.

---

[1] Under Rule 1.5(b)(5) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, "[i]n connection with activities in this Court, any attorney is found to have engaged in conduct violative of the [RPC] … In interpreting the Code, in the absence of binding authority …, this Court, in the interests of comity and predictability, will give due regard to decisions of the New York Court of Appeals and other New York State courts, absent significant federal interests."

01-CIV.-2112 (WHP), 2002 WL 441194, at \*4 (S.D.N.Y. Mar. 21, 2002) (quoting Armstrong v. McAlpin, 625 F.2d 433, 444 (2d Cir.1980), vacated on other grounds and remanded, 449 U.S. 1106 (1981)); see also Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir.1981).

Moreover, where an attorney has an interest adverse to a client, a "*per se*" standard applies and the attorney must be disqualified unless he or she can demonstrate "'at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation.'" See Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp. 2d 381, 388-89 (S.D.N.Y. 2010). This standard is based on the ethical principle that an attorney must exercise independent judgment on behalf of a client.  Id.

## ARGUMENT

### THE OTTINGER FIRM, P.C. SHOULD BE DISQUALIFED

**I.   Disqualification is Warranted Because of Engagement in Improper Solicitations**

Rule 7.3 of the RPC prohibits an attorney from engaging in solicitation, *inter alia*, by telephone contact.  See Shibetti v Z Rest., Diner and Lounge, Inc., No. 18-CIV.-856 (BMC), 2021 WL 1738315, at \*6 (E.D.N.Y. May 3, 2021) "The collective action context does not change the ethical analysis."  Id.

The Ottinger Firm violated Rule 7.3 of the RPC, warranting disqualification.     As   set forth *supra*, in late March and April 2021, the Ottinger Firm commenced a targeted and harassing campaign of unexpected, unsolicited, and random telephone calls and text messages for the purpose of soliciting individuals to join this lawsuit.  This purpose is clear by Pagan's text message to Booker, which stated "**Let's get this money.  Your gunna wanna hear this 😊 Call me at anytime so I can put you on[.]**" The implication of Pagan's text message is clear: join the lawsuit I filed so you can make money.

Defendants respectfully submit that Plaintiff acted at the direction of the Ottinger Firm in reaching out to Booker.  This is made clear by the Ottinger Firm's subsequent tirade of text messages and phone calls to Booker and Baca.  It is also clear from a review of the dates and times Booker and Baca were called that the Ottinger Firm acted with the intent of targeting all employees based on the successive contacts made.  In addition, the evidence presented unquestionably refutes Plaintiff's anticipated position that contact was made to conduct witness interviews; indeed, both Booker and Baca understood that the reason they were contacted was to join the lawsuit, not serve as witnesses.

In Rivera v. Lutheran Medical Center, defense counsel improperly solicited witnesses on behalf of the defendant to gain a tactical advantage in the litigation by insulating them from any informal contact with plaintiff's counsel.  See 866 N.Y.S. 2d 520, 525-27 (Sup. Ct. Kings Cty. 2008) aff'd 73 A.D.3d 891 (2d Dept. 2010).  The court disqualified defense counsel due to its improper solicitation of witnesses.  Id.  This Court should do the same here, where the Ottinger Firm solicited individuals and failed to disclose any of these individuals in their Rule 26 disclosures, thus engaging in conduct which presents them with an unfair advantage in that they are failing to disclose any individuals with discoverable information.

More recently, Judge Cogan granted a motion for sanctions against a law firm that engaged in the very same conduct that the Ottinger Firm has engaged in.  See Shibetti, No. 18-CIV.-856 (BMC), 2021 WL 1738315.

There, where the employer did not seek disqualification, Judge Cogan held:

> In a class action, "a district court has both the duty and the broad authority to exercise control over [the] class action and to enter appropriate orders governing the conduct of counsel and parties." Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981). This authority "exists even before a class is certified." O'Conner v. Agilant Sols., Inc., 444 F. Supp. 3d 593, 601 (S.D.N.Y. 2020) (quotation omitted).

10

The authority also allows the court to "limit communications by plaintiffs, defendants, or both." Zamboni v. Pepe W. 48th St. LLC, No. 12-cv-3157, 2013 WL 978935, at *2 (S.D.N.Y. March 12, 2013).

…

In a collective action, plaintiffs' counsel … lacks an attorney-client relationship with potential plaintiffs, regardless of whether the court has granted conditional approval to proceed with a collective action. See Scott v. Chipotle Mexican Grill, Inc., No. 12-cv-08333, 2014 WL 4852063, at *3 (S.D.N.Y. Sept. 29, 2014) (noting that the attorney-client relationship arises only if the plaintiff has opted in). Because plaintiffs' counsel is communicating with unrepresented individuals …, it makes sense to apply the same principles governing communications.

…

If proven, unethical conduct can "justify restricting further use of the contact information beyond that of completing the notice phase" in a collective action. Gordon v. Kaleida Health, 737 F. Supp. 2d 91, 97 (W.D.N.Y. 2010); see also O'Conner, 444 F. Supp. 3d at 602 n.5 (noting that courts have "authority to remedy ethical violations" in the collective action context). This Court generally looks to the New York State Rules of Professional Conduct to determine the scope of ethical conduct. See Local Civil Rule 1.5(b)(5). Those rules bar the solicitation of business in person or by telephone. See [RPC] 7.3(a)(1).

…

Here, an attorney called specific individuals, asking them to "give [him] a call back" if they had "any interest in joining this lawsuit." That was a solicitation.

…

"The solicitation of business by a lawyer through direct, in-person communication with the prospective client has long been viewed as inconsistent with the profession's ideal of the attorney-client relationship and as posing a significant potential for harm to the prospective client." Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 454 (1978). The Supreme Court has repeatedly disapproved of this form of communication, even as it has expanded the First Amendment protections for attorney advertising. See Shapero v. Ky.

<u>Bar Ass'n</u>, 486 U.S. 466, 475 (1988) (distinguishing targeted, direct-mail solicitation). "[T]he mode of communication makes all the difference," <u>id.</u>, and telephone and in-person solicitation are "rife with possibilities for overreaching, invasion of privacy, the exercise of undue influence, and outright fraud," <u>id.</u> (quoting <u>Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio</u>, 471 U.S. 626, 641 (1985)).

The collective action context does not change the ethical analysis. For starters, "[c]ourt intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims." <u>Hoffmann-La Roche</u>, 493 U.S. at 174. And the Supreme Court has specifically cautioned that "potential abuses associated with communications to class members" include the "heightened susceptibilities of nonparty class members to solicitation amounting to barratry as well as the increased opportunities of the parties or counsel to 'drum up' participation in the proceeding." <u>Gulf Oil</u>, 452 U.S. at 101 n.12 (quotation omitted). Therefore, neither the FLSA nor the relevant precedent carves out an exception to the ethical rules.

Nor do the rules carve out an exception for collective actions. In New York, Rule 7.3(a)(1) prohibits solicitation "by in-person or telephone contact ... unless the recipient is a close friend, relative, former client or existing client." This Rule 7.3 tracks the ABA's Model Rule 7.3, which the ABA has interpreted to prohibit in-person and telephone solicitation of potential class members. <u>See</u> ABA Formal Op. 07-445 (2007). Thus, "[t]he fact that an action has been filed as a class action" – or as a collective action – "does not affect the policies underlying Rule 7.3 that prohibit the types of contact with prospective clients that have serious potential for overreaching and other abuse." <u>Id.</u>; <u>see also</u> <u>Mendez</u>, 2015 WL 4249219, at *3 (applying Formal Opinion 07-445 in an FLSA collective action).

That rule controls this case. There is no factual dispute, for plaintiffs' counsel acknowledges that they made the calls. Counsel instead relies on unconvincing excuses. Counsel first claim that they "had a valid reason" to call potential plaintiffs, given defendants' failure to provide complete contact information. Yet counsel cites no authority for this argument that two wrongs make a right.

Counsel thus retreats to a position that the calls were "wholly proper" because counsel "generally" has a right to contact potential plaintiffs.

> To be sure, the Supreme Court, the American Bar Association, and several courts in this Circuit have concluded that both plaintiffs' counsel and defense counsel "have legitimate need to reach out" to potential plaintiffs in certain situations. ABA Formal Op. 07-445; see also Gulf Oil, 452 U.S. at 101–02; Brown v. Mustang Sally's Spirits & Grill, Inc., No. 12-cv-529, 2012 WL 4764585, at *2 (W.D.N.Y. Oct. 5, 2012). This need may include "obtain[ing] information about the merits of the case," Gulf Oil, 452 U.S. at 101, or uncovering "information that may be relevant to whether or not a class should be certified," ABA Formal Op. 07-445. But the fact that counsel can contact individuals for some purposes does not mean that counsel can contact them for any purpose. Direct solicitation by telephone is not a permissible purpose. Therefore, the actions of plaintiffs' counsel warrant sanctions.

See Shibetti at *4-*9 (sanctioning plaintiff's counsel in the amount of $1,000.00 and reserving judgment as to whether plaintiff's counsel shall be entitled to collect attorneys' fees or costs for the work done on motions and as to whether any fee award should be reduced based on the conduct at issue and declining to award attorneys' fees due to the defendants conduct in that case).

In this case, the Ottinger Firm's similarly egregious conduct violates the RPC and warrants disqualification.  Based on the declarations submitted by Booker and Baca, it is clear that the Ottinger Firm engaged in "cold-calling" and text messaging employees of the Restaurant solely to solicit its legal services directly to individuals to have them join this case as opt-in plaintiffs.

Based on the foregoing undeniable facts that the Ottinger Firm refused to even discuss settlement, had Pagan act as their agent in reaching out to other employees to "get this money" so that he can "put [them] on," and themselves directly reached out to other employees at the Restaurant by telephone and via text message, disqualification of the Ottinger Firm is warranted, and Defendants respectfully request that the Court enter an Order disqualifying the Ottinger Firm from representing Plaintiff and any opt-in plaintiffs in this case.  A corrective notice should also be issued to all employees that their conduct was wrong, unethical, and that any further improper contact should be reported to this Court.

**II.      Disqualification is Also Warranted Due to a Conflict of Interest with the Plaintiff**

Rule 1.7(a) of the RPC states in pertinent part that a lawyer shall not represent a client if the representation will involve the lawyer in representing differing interests or a reasonable lawyer would conclude that there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.  Indeed, "an attorney may not place himself in a position where a conflicting interest may, even inadvertently, affect, or give the appearance of affecting, the obligation of the professional relationship."  See Galindo v State Farm Fire & Cas. Co., 2014 N.Y. Misc. LEXIS 1816, 9-11 (Sup. Ct. Apr. 15, 2014) (quoting Roddy v. Nederlander Producing Co. of America, Inc., 96 A.D.3d 509 (1st Dept. 2012)).

As explained in Galindo:

> An attorney must avoid not only the fact, but even the appearance, of representing conflicting interests. [T]he greatest trust between [people] is the trust of giving counsel. This unique fiduciary reliance . . . is imbued with ultimate trust and confidence. Furthermore,[t]he duty to deal fairly, honestly and with undivided loyalty superimposes onto the attorney-client relationship a set of special and unique duties, including maintaining confidentiality, avoiding conflicts of interest,. . . and honoring the clients' interests over the lawyer's. Indeed, the lawyer may not place himself in a position where a conflicting interest may, even inadvertently, affect, or give the appearance of affecting, the obligations of the professional relationship.

Id. (citing Flores v. Willard J. Price Assocs., LLC, 20 A.D.3d 343 (1st Dept. 2005). A violation of Rule 1.7(a), where an attorney puts his or her own personal interests' above the plaintiffs' interests has resulted in disqualification of counsel.  See Crews v. County of Nassau, 2007 U.S. Dist. LEXIS 6572 (E.D.N.Y. Jan. 30, 2007); see also Galindo, 2014 N.Y. Misc. LEXIS 1816.

Rule 1.4(b) of the RPC requires counsel to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Rule 1.4(a)(1)(3) of the RPC requires counsel to promptly inform its clients about material developments in the matter.  Rule 1.4(a)(3) of the RPC requires counsel to keep clients reasonably informed about the status of the matter.

The Ottinger Firm violated Rules 1.4 and 1.7 of the RPC, warranting disqualification.

The Ottinger Firm incontrovertibly derailed early settlement efforts on the ground that they intend to seek a class action and expressly refused to provide a damages calculation as a result of the Ottinger Firm's desire for financial gain.  Indeed, it is evident from the October 2020 correspondence that the Ottinger Firm made decisions regarding settlement without even consulting with their client Pagan.

This Court should also take judicial notice that Pagan is a serial litigant.[2]  See Pagan v. Fishbox Restaurant Corp., No. 1:17-cv-9458 (KPF) (DCF).  The Ottinger Firm represented Pagan in that case, as well, and though a class and/or collective action was sought there, the parties in that case were subject to an arbitration agreement.  See Id.

The Ottinger Firm's improper solicitations were performed at Plaintiff's expense by delaying his case (for nearly a year now) and preventing a resolution of same so that the Ottinger Firm could attempt to obtain additional clients solely for the Ottinger Firm's personal financial gain.  The Ottinger Firm improperly solicited Booker and Baca, as well as a third individual who fears for his safety and is therefore not named, and continued to solicit other individuals to join this case early in the litigation for the financial benefit of the Ottinger Firm for the improper and unattainable purpose of seeking to secure a million dollar settlement in a case where the Restaurant has accurate and contemporaneous time records together with appropriate pay records.

---

[2] Judicial notice may be taken of documents filed in other cases and other courts. See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998).

Indeed, setting aside the fact that Plaintiff never worked any overtime, Plaintiff gains nothing financially by delaying this case so that the Ottinger Firm can improperly solicit additional clients for itself; in fact, Plaintiff suffers financially because the Ottinger Firm's solicitations has prevented him from potentially resolving his claims early in the litigation.  This is an undisputed fact based on written correspondence exchanged between Defendants' counsel and the Ottinger Firm.  It is anticipated that the Ottinger Firm will argue that they attended mediation in good faith and the case simply did not settle.  Defendants respectfully submit that the Ottinger Firm paid lip service to the mediation process, which ended early as a result of their refusal to negotiate in good faith, and improperly did so due to their desire to certify a class or collective action in this case.

The Court should therefore conduct an evidentiary hearing regarding whether (1) the Ottinger Firm conveyed Defendants' early desire to attempt to resolve this matter (and actual settlement offer) to the Plaintiff and (2) whether Plaintiff actually wishes to pursue a class and/or collective action.  Based on the findings therein, the Court should issue further appropriate relief.

## **CONCLUSION**

Based on the foregoing, Defendants respectfully request that the Court issue an Order granting this motion to disqualify the Ottinger Firm from representing the Plaintiff or any opt-in plaintiffs in this case, together with other sanctions such as a monetary penalty, attorneys' fees related to the instant motion, an Order finding that they are not to collect any fees for the work performed in soliciting any opt-in plaintiffs together with any work that is fruit of the poisonous tree, as well as the issuance of a corrective notice to all employees of the Restaurant that the Ottinger Firm improperly contacted them, that it is not permissible for the Ottinger Firm to contact them, and that any attempts to contact them should be reported directly to the Court, and such other and further relief as this honorable Court deems just, equitable, and proper.

Dated:  Lake Success, New York
       June 24, 2021

                    **MILMAN LABUDA LAW GROUP PLLC**

                    By:  /s   Emanuel Kataev, Esq._____
                    Emanuel Kataev, Esq.
                    3000 Marcus Avenue, Suite 3W8
                    Lake Success, NY 11042-1073
                    (516) 328-8899 (office)
                    (516) 303-1395 (direct dial)
                    (516) 328-0082 (facsimile)
                    emanuel@mllaborlaw.com

                    *Attorneys for Defendants*

**<u>VIA ECF</u>**
The Ottinger Firm, P.C.
<u>Attn:</u> Finn Dusenbery, Esq.
401 Park Avenue South
New York, NY 10016-8800
finn@ottingerlaw.com