UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOSEPH PAGAN,

Plaintiff,

**Case No.:** 1:20-cv-7349 (ALC) (SDA)

-against-

C.I. LOBSTER CORP., JOSEPH MANDARINO, RICHARD MANDARINO, and JOHN MANDARINO,

Defendants.
-----------------------------------------------------------------X

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISQUALIFY THE OTTINGER FIRM, P.C FROM REPRESENTING PLAINTIFF AND ANY OPT-IN PLAINTIFFS**

**MILMAN LABUDA LAW GROUP PLLC**

Emanuel Kataev, Esq.
3000 Marcus Ave., Suite 3W8
Lake Success, NY 11042
(516) 328-8899 (office)
(516) 303-1395 (direct dial)
(516) 328-0082 (facsimile)
emanuel@mllaborlaw.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** .......... 1

**ARGUMENT** .......... 3

**THE OTTINGER FIRM, P.C. SHOULD BE DISQUALIFED BECAUSE IT UNETHICALLY SOLICITED EMPLOYEES** .......... 4

**CONCLUSION** .......... 11

# TABLE OF AUTHORITIES

## Cases

Dziennik v. Sealift, Inc.,
No. 05-CIV.-4659 (DLI) (MDG), 2006 WL 1455464 (E.D.N.Y. May 23, 2006) ......... 6, 7

Gulf Oil Co. v. Bernard,
452 U.S. 89 (1981)........................................................................................... 4, 5

Mendez v. Enecon Ne. Applied Polymer Sys., Inc.,
No. 14-CIV.-6736 (ADS) (AKT), 2015 WL 4249219 (E.D.N.Y. Jul. 13, 2015)........... 5, 6

Norton v. Sam's Club,
145 F.3d 114 (2d Cir. 1998)................................................................................ 8

Rivera v. Lutheran Medical Center,
866 N.Y.S. 2d 520 (Sup. Ct. Kings Cty. 2008)...................................................... 9

Rivera v. Lutheran Medical Center,
73 A.D.3d 891 (2d Dept. 2010) .......................................................................... 9

Shibetti v Z Rest., Diner and Lounge, Inc.,
No. 18-CIV.-856 (BMC), 2021 WL 1738315 (E.D.N.Y. May 3, 2021) ............................ 9

Wong v. Yoo,
649 F. Supp. 2d 34 (E.D.N.Y. 2009) ..................................................................... 8

## Rules

Rule 7.3 of the New York Rules of Professional Conduct .................................................... 6, 7, 8

## Other Sources

ABA Formal Op. 07-445 (2007)............................................................................ 7

**PRELIMINARY STATEMENT**

In stunning fashion, Plaintiff's counsel – The Ottinger Firm, P.C. (hereinafter the "Ottinger Firm") – responds to Defendants' motion to disqualify it from representing the Plaintiff and any putative opt-in plaintiffs by claiming – without any support whatsoever but for their self-serving statements – that the purpose of reaching out to other employees employed by C.I. Lobster Corp. (hereinafter the "Corporate Defendant" or the "Restaurant") was supposedly for the purpose of investigating Plaintiff's claims in their capacity as "potential witnesses."

Forced as they are to respond this way, the Ottinger Firm's representation is readily refuted based on the evidence set forth further below and as set forth in Defendants' moving papers to the instant motion, which the Ottinger Firm curiously has failed to address in any substance.

Specifically, employees of the Restaurant – Laundel Booker (hereinafter "Booker") and Christopher Baca ("Baca") – each averred that the purpose of them being contacted by the Ottinger Firm was solely to join the lawsuit. See Docket Entry 38-4 at 5 ¶¶ 47-50 ("I don't appreciate the fact that Pagan and his lawyers contacted me without requesting that they do so to get me involved in a lawsuit that I do not want to be a part of. Neither Pagan nor his lawyers ever asked me any questions or otherwise sought to interview [me] as a witness. It was clear to me, especially from Pagan's message, that the purpose of him contacting me was to join the lawsuit. It was also clear to me that when Pagan's attorney contacted me, his lawyer had the same purpose: to have me join the lawsuit"); see also Docket Entry 38-5 at 5 ¶¶ 45-47 ("I don't appreciate the fact that Pagan and his lawyers contacted me without requesting that they do so to get me involved in a lawsuit that I do not want to be a part of. Neither Pagan nor his lawyers ever asked me any questions or otherwise sought to interview as a witness. It was clear to me, especially from Pagan's attorney's message, that the purpose of him contacting me was to join the lawsuit"). It was not to interview them.

What's worse, it is insulting for the Ottinger Firm to argue its failure to specifically state that it sought to solicit Baca and Booker – an unethical act with serious implications, as set forth in in the instant motion – should somehow operate in its favor to deny the relief requested in this motion because common sense dictates and any reasonable person would find that solicitation was their very purpose. The attorneys within the Ottinger Firm have ethical duties who must act as officers of the Court; as such, to the extent that Finn Dusenbery ("Dusenbery") wished to interview Baca and Booker for the purpose of fact gathering, he would have and should have stated that was the purpose of his communication. Neither Dusenbery nor anyone else at the Ottinger Firm did so, and Defendants respectfully submit that nobody, especially an attorney, should be walking the grey line on what is otherwise a black-and-white issue.

Tellingly, the Ottinger Firm has not submitted any affidavit whatsoever from the Plaintiff Joseph Pagan (hereinafter "Pagan" or the "Plaintiff"), himself, to indicate whether he has any preference or motivation to pursue a class or collective action. Moreover, the Ottinger Firm's opposition to Defendants' request for an evidentiary hearing speaks and screams volumes; if anything, the Ottinger Firm should be joining Defendants' request for a hearing to vindicate itself and prove that it really only sought to fact-gather, not solicit. They cannot do so.

Almost quizzically, the Ottinger Firm seeks sanctions against your undersigned for some purported effort to hinder "*Plaintiff's counsel's*" (critically, not Plaintiff's) pursuit of this case and to smear its reputation. While the best defense may be a good offense – hence the Ottinger Firm's puzzling play – the Ottinger Firm has in no way been prevented from filing a motion to conditionally certify a collective action since September 2020, when this case was first filed; nor has any action been undertaken to smear the Ottinger Firm's representation, as the conduct complained of is supported by direct, admissible evidence.

Accordingly, Defendants' motion must be granted in its entirety, and Plaintiff's cross-motion for sanctions, attorneys' fees, and costs must be denied.

## ARGUMENT

It is worth reviewing the text messages and phone calls once more in the context of this motion.

> **Yo it's Joseph from lobster house. *Let's get this money.* Your gunna wanna hear this 😉 Call me at anytime so I can *put you on* Joseph the Puerto Rican kid not jojo dumb ass[.]**

See Docket Entry 38-4 at 4 ¶ 31 (emphasis added).

This was the precipice from which the Ottinger Firm's barrage of unsolicited text messages, phone calls, and voicemails commenced. Pagan contacted Booker on March 29, 2021 at 4:26 PM. Id. Just a little over an hour later the same day, at 5:29 PM, Dusenbery called Booker and left him a voice message requesting a call back. Id. at ¶ 33. Two days later, Dusenbery sent Booker a text message at 8:46 PM. Id. at ¶ 36. The only logical conclusion that can be reached from this undisputed evidence is that the Ottinger Firm directed Pagan to solicit Booker and then, to put the icing on the cake, the Ottinger Firm proceeded to push the envelope by soliciting Booker on its own almost immediately thereafter. Indeed, the timing establishes a premeditated plan between the Ottinger Firm and Pagan to solicit Booker.

Specifically, Baca received a call and voicemail directly from Dusenbery on March 24, 2021 at 6:36 PM, five (5) days prior to Pagan's first contact with Booker. See Docket Entry 38-5 at 4 ¶ 30. Additional calls followed on March 29, 2021 and April 1, 2021. Id. at ¶ 32. On April 1, 2021, Dusenbery also sent a text message to Baca at 8:43 PM. Id. at ¶ 34.

Indeed, it is curious how mechanically Dusenbery contacted Booker and Baca, almost symmetrically, as set forth in the below chart:

| **Booker** | **Baca** |
|---|---|
| 3/29/2021 4:26 PM Pagan Text Message | 3/24/2021 6:36 PM Dusenbery Call & Voicemail |
| 3/29/2021 5:29 PM Dusenbery Call & Voicemail | 3/29/2021 & 4/1/2021 Dusenbery Call |
| 4/1/2021 **8:46 PM** Dusenbery Text Message | 4/1/2021 **8:43 PM** Dusenbery Text Message |

The timing was not coincidental. Notwithstanding the foregoing, the Ottinger Firm argues that it committed no ethical wrongdoing since it merely sought to gather information.

Dusenbery fails to provide a declaration from Pagan nor does Dusenbery present any evidence other than his self-serving declaration that he sought to "gather information."

**The Ottinger Firm, P.C. Must be Disqualified Because it Unethically Solicited Employees**

In opposition to Defendants' motion for disqualification, the Ottinger Firm relies on Gulf Oil v. Bernard to support its unethical conduct in this case. See 452 U.S. 89, 100 (1981) (stating generally that an Order banning all communications concerning the class action between parties or their counsel and any actual or potential class member who was not a formal party, without the prior approval of the court, *inter alia*, made it more difficult for respondents, as the class representatives, to obtain information about the merits of the case from the persons they sought to represent. In Gulf Oil, the Supreme Court stated that, "because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." Id. In the context of the actual underlying issue, however, the Supreme Court held that "to the extent that the district court is empowered ... to restrict certain communications in order to prevent frustration of the policies of Rule 23, *it may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened*. … In the present case, one looks in vain for any indication of a careful weighing of competing factors. Indeed, in this respect, the District Court failed to provide any record useful for appellate review." See Id. at 102.

This case is inapposite from Gulf Oil in two material respects.

First, there exists no Order banning all communications, and no such Order is sought here. While the Ottinger Firm is certainly free to investigate facts, that is not what it did here. It improperly solicited at least two (2) employees of the Restaurant to become plaintiffs.

Second, the Supreme Court found that traditional concerns about "stirring up" litigation were misplaced in Gulf Oil where the parties seeking a class action there were represented by a non-profit organization which solicited clients intended to advance political objections rather than for pecuniary gain. Id. at 100 n. 12. This is clearly not the case here, where the Ottinger Firm set about on a quixotic quest to recover $1.5M or $1.8M in overtime pay (as it did in two unrelated cases), from an establishment which keeps proper records, pays its employees properly, and where Pagan himself cannot demonstrate from the time and pay records submitted that he was not properly paid. Indeed, as set forth in the moving papers, he never even worked overtime!

The Ottinger Firm's reliance on Mendez v. Enecon Ne. Applied Polymer Sys., Inc. is similarly misplaced. See No. 14-CIV.-6736 (ADS) (AKT), 2015 WL 4249219 (E.D.N.Y. 2015). There, Plaintiff's counsel sent letters to employees *specifically stating that they were investigating their client's claims and were seeking information*. Id. at *1. This is not the case here, where Pagan contacted Booker telling him "let's get the money" and then Dusenbery, merely one (1) hour later, sent Booker cryptic messages asking for a call, which was specifically designed to solicit Booker to become a plaintiff and be "put on." This key phrase – "put on" – clearly establishes the purpose behind Dusenbery's contact with Booker following Pagan's message.

If anything, Mendez supports Defendants' position that the Ottinger Firm's conduct is entirely improper. There, Judge Tomlinson held that the "[t]he 'primary purpose [of a court] in *supervising* communications is to ensure that potential members receive accurate and impartial information regarding the status, purposes and effects of the class action.'" Id. (citations omitted).

As set forth in Defendants' moving papers, the conduct of the parties in putative collective action cases is regulated by the court-authorized collective action notice, which leads to the inescapable conclusion that the parties should not be engaging in *ex parte* contact with putative opt-in plaintiffs. Dusenbery even admits that the purpose of his contacts with Booker and Baca was, in part, for the purpose of moving to conditionally certify a collective action. See Docket Entry 41 at 6 ("the undersigned sent text messages to phone numbers believed to belong to potential witnesses Laundel Booker and Christopher Baca in an attempt to gather information about the claims in this case *and a possible conditional certification motion under the FLSA*") (emphasis added).

While Judge Tomlinson held in Mendez that *plaintiffs* generally have a right to contact members of the putative class, she did not hold that it is permissible for plaintiff's counsel, such as the Ottinger Firm, to violate Rule 7.3 of the New York Rules of Professional Conduct. Id. at *2. To the extent that her Order can be read to include the parties' counsel, she clarifies:

> [b]oth parties need to be able to communicate with putative class members-*if only to engage in discovery* regarding issues relevant to class certification-from the earliest stages of class litigation.... District courts thus must not interfere with any party's ability to communicate freely with putative class members, *unless there is a specific reason to believe that such interference is necessary*.

Id. (emphasis added) (citation omitted). Here, Defendants respectfully submit that such interference is necessary, as there is no evidence whatsoever – other than Dusenbery's reactive self-serving statements – that employees were contacted for information gathering purposes.

Indeed, both Booker and Baca specifically stated that they understood Dusenbery's barrage of contacts with each of them was for the sole purpose of having them join the lawsuit, not to serve as witnesses. See Docket Entry 38-4 at 5 ¶¶ 47-50; see also Docket Entry 38-5 at 5 ¶¶ 45-47.

The Ottinger Firm's reliance on Dziennik v. Sealift, Inc. is misguided for the same reason.

There, Judge Marilyn D. Go specifically cautioned that Rule 23 should not be used as a device to enable client solicitation and that misleading communications to class members concerning the litigation poses a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally. See No. 05-CIV.-4659 (DLI) (MDG), 2006 WL 1455464, at *1, *3 (E.D.N.Y. May 23, 2006).

As the Ottinger Firm readily admits, Rule 7.3's restrictions concerning attempts to represent putative class members do not apply to contacting potential class members as witnesses, *so long as those contacts are appropriate and comport* with the Rules of Professional Conduct. See ABA Formal Op. 07-445 (2007). Defendants respectfully submit that the contacts made by Dusenbery were inappropriate and did not comport with the Rules of Professional Conduct because: (i) they were not clear communications seeking to gather information; (ii) the Ottinger Firm failed to identify these individuals as those likely to have discoverable information in their Rule 26 disclosures; and (iii) both Booker and Baca specifically averred, and the evidence establishes, that they understood the purpose of contact was for impermissible goal of joining them to the case. Accordingly, Defendants respectfully submit that they have met their burden of proof on this issue; to the extent they have not, Defendants request an evidentiary hearing to enable them to do so.

Tellingly, Pagan, himself, has not submitted any sworn declaration concerning his desire to pursue a class action or to conditionally certify a collective action. The Ottinger Firm relies on this lack of evidence to argue that Defendants have failed to prove Pagan acted at its direction.

However, it is worthy to note in the same regard that – despite their complete, unfettered access to him – Pagan has failed to aver that he was not directed by the Ottinger Firm to recruit individuals to join this lawsuit.

Of course, there is a reason why there is no direct evidence of the Ottinger Firm's unethical conduct: Dusenbery and his cohorts know that their conduct is forbidden and thus take steps to hide it by being vague in their written communications so that they may later rely on this very vagueness to later protect themselves. It is no different than individuals who engage in unlawful discrimination. See Wong v. Yoo, 649 F. Supp. 2d 34, 69 (E.D.N.Y. 2009) (quoting Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir. 1998) ("plaintiffs in discrimination suits often must rely on the cumulative weight of circumstantial evidence," and a defendant "is unlikely to leave a 'smoking gun'"). Defendants respectfully submit that the very same principles apply here, except that based on Pagan's text message to "let's get this money" and to "put [Booker] on," followed immediately by a barrage of contact by Dusenbery is more than a smoking gun, warranting the relief sought herein.

Similarly, while Dusenbery derides Booker and Baca for allegedly speculating as to the purpose of his unsolicited contact, the Ottinger Firm ignores the great impact an attorney's contact has on the subjective mind of a layperson. Indeed, Comment 9 to Rule 7.3 of the New York Rules of Professional Conduct specifically provides:

> [The Rules] generally prohibits in-person solicitation, which has *historically been disfavored* by the bar because it *poses serious dangers to potential clients*. For example, in-person solicitation poses the risk that *a lawyer, who is trained in the arts of advocacy and persuasion, may pressure a potential client to hire the lawyer* without adequate consideration. These *same risks are present in telephone contact*

Id. (emphasis added).

In that regard, the onus was on the Ottinger Firm to be clear about its intentions in contacting Booker, Baca, and any other employee they contacted.

An example of this may be found in the declarations of Booker and Baca, wherein each was informed about the purpose of your undersigned's contact with them, in addition to their rights and obligations, upon being interviewed for the purpose of actual fact gathering. See Docket Entry 38-4 at 1 ¶¶ 1-7; see also Docket Entry 38-5 at 1 ¶¶ 1-7.

The Ottinger Firm's attempts to distinguish Rivera v. Lutheran Medical Center and Shibetti v. Z Restaurant, Diner and Lounge, Inc. are equally unavailing. Indeed, other than Dusenbery's self-serving declaration, he provides no evidence for this Court to make a finding that he "only sought to interview [employees] to gather information." Further, while the plaintiff's attorneys in Shibetti specifically stated in their communications that they sought for potential opt-in plaintiffs to join the lawsuit while Dusenbery did not do so to hide his unethical conduct, as set forth above, this Court should not permit the Ottinger Firm's decision to walk the grey-line of their ethical obligations to shelter them from the relief sought herein.

The Ottinger Firm also argues that Rule 26 only requires the names and contact information of individuals likely to have discoverable information that a party may use to support its claims and defenses, and the fact that they did not speak to either Booker or Baca, to wriggle out of their requirement to disclose witnesses as required. However, this begs the question of who else they solicited, and what information – if any – they learned from any such individuals contacted.

In addition, the Ottinger Firm asserts that there is no conflict of interest between itself and the Plaintiff because they participated in a mediation. However, this statement ignores the fact that the Ottinger Firm had no basis for refusing to negotiate a settlement in good faith on the ground that Plaintiff seeks a class and/or collective action when there is no evidence to support that Pagan, himself, wishes to avail himself of same.

Similarly, the Ottinger Firm argues in its opposition papers that Plaintiff is entitled to discovery related to his claims, including time and pay records, to see what "purported" hours Plaintiff was paid for in this case *alleging off-the-clock* work. See Docket Entry 41 at 12. However, Defendants produced these records as set forth in their moving papers, and – more importantly – both the Complaint and the Amended Complaint are barren as to any allegations whatsoever of off-the-clock work. In other words, the Ottinger Firm is backpedaling in an attempt to justify their unethical solicitations by passing them off as attempts to investigate facts, when the primary source of that information is Pagan, himself, and his complaint does not allege any off-the-clock work in any event.

Finally, the Ottinger Firm's request for sanctions against Defendants and their counsel concerning this motion must be denied. The law is clear that attorneys are not permitted to engage in solicitations of clients and that is what they have done here.

While Defendants properly seek an evidentiary hearing to the extent that this Court finds there is not enough evidence to conclusively establish the Ottinger Firm's ethical misconduct, they respectfully submit that the evidence presented and the impressions firmly left in the minds of Booker and Baca make it abundantly clear that the purpose of the Ottinger Firm's contacts with them was solely for the purpose of soliciting them to join this lawsuit to "get this money" and be "put on."[1]

[1] With regard to the Ottinger Firm's reference to Piccolo v. Top Shelf Prods., Inc., in which Saul Zabell – an attorney who has frequently been sanctioned for his conduct – was involved, Defendants respectfully submit that this Court should not consider that case in the context of this motion, which is focused on the Ottinger Firm's conduct. Further, your undersigned respectfully submits that he was not an attorney of record in that case, and that the plaintiff's attorney there, among many other things, called the police on my colleague and partner, Joseph M. Labuda, during a deposition because Mr. Labuda sought to question a witness once Zabell completed his deposition.


On the whole, there is no gamesmanship with respect to this motion. Defendants merely seek relief based on the Ottinger Firm's improper solicitations, which have – among other things – affected the morale of the Restaurant's employees. The Ottinger Firm must therefore be stopped.

**CONCLUSION**

Based on the foregoing, Defendants respectfully request that the Court issue an Order:

(i) granting this motion to disqualify the Ottinger Firm from representing the Plaintiff or any opt-in plaintiffs in this case; together with other sanctions, such as

(ii) a monetary penalty;

(iii) attorneys' fees related to the instant motion;

(iv) an Order finding that it is not to collect any fees for the work performed in soliciting any opt-in plaintiffs together with any work that is fruit of the poisonous tree;

(v) the issuance of a corrective notice to all employees of the Restaurant that the Ottinger Firm improperly contacted them, that it is not permissible for the Ottinger Firm to contact them, and that any attempts to contact them should be reported directly to the Court;

(vi) an evidentiary hearing to the extent one is necessary to conclusively establish the Ottinger Firm's unethical conduct in this case; and

(vii) such other and further relief as this honorable Court deems just, equitable, and proper.

Dated: Lake Success, New York
July 15, 2021

**MILMAN LABUDA LAW GROUP PLLC**
By: /s Emanuel Kataev, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1395 (direct dial)
(516) 328-0082 (facsimile)
emanuel@mllaborlaw.com

*Attorneys for Defendants*

**VIA ECF**
The Ottinger Firm, P.C.
Attn: Finn Dusenbery, Esq.
401 Park Avenue South
New York, NY 10016-8800
finn@ottingerlaw.com