UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Joseph Pagan, individually and on behalf of all others similarly situated,

                      Plaintiff,

-against-

C.I. Lobster Corp. et al.,

                      Defendants.

1:20-cv-07349 (ALC) (SDA)

OPINION AND ORDER

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:**

Pending before the Court is a motion by Defendants C.I. Lobster Corp. (the "Restaurant"), Joseph Mandarino, Richard Mandarino and John Mandarino (collectively, the "Defendants") seeking to disqualify The Ottinger Firm, P.C. ("Ottinger Firm"), from serving as counsel for Plaintiff Joseph Pagan ("Plaintiff" or "Pagan") or any opt-in plaintiffs in this case. For the reasons set forth below, Defendants' motion is DENIED.

**BACKGROUND**

On September 9, 2020, Plaintiff commenced this action by filing a Complaint.[1] (*See* Compl., ECF No. 1.) The Complaint, which was signed and filed by Finn W. Dusenbery ("Dusenbery") of the Ottinger Firm, asserts collective and class claims against Defendants for wage and hour violations under the Fair Labor Standards Act and the New York Labor Law.[2] (*See*

---

[1] On September 11, 2021, the Complaint was refiled at ECF No. 2, due to an error with the initial filing.

[2] The Complaint also asserted individual claims by Plaintiff against Defendant Joseph Mandarino for "gender/perceived sexual orientation" discrimination under the New York City Human Rights Law ("NYCHRL") and against all Defendants for race discrimination under the NYCHRL. (*See* Compl. ¶¶ 98-105.) However, those claims were withdrawn and not included in Plaintiff's later-filed amended pleading. (*See* Am. Compl., ECF No. 25.)

*id*. ¶¶ 57-97.) On October 23, 2020, defense counsel, Emanuel Kataev ("Kataev"), entered his appearance. (Not. of Appearance, ECF No. 12.)

On January 21, 2021, a mediation was held to seek to settle this action, but was unsuccessful. (*See* Kataev Decl., ECF No. 38, ¶ 4; Dusenbery Aff., ECF No. 42, ¶¶ 4-5.) While Defendants sought to settle this action on an individual basis with Pagan alone (*see* Defs.' Mem., ECF No. 39, at 2-3), Pagan "agreed to litigate this case on a class and/or collective action basis and understands that the case will proceed on that basis" (Dusenbery Aff. ¶ 6), and Pagan rejected Defendants' settlement offer. (*See id*. ¶ 5.)

On February 22, 2021, Plaintiff filed his Amended Complaint. (*See* Am. Compl.) On March 19, 2021, Defendants filed their Answer to the Amended Complaint. (*See* Ans. to Am. Compl., ECF No. 28.) On March 24, 2021, at 6:36 p.m., Christopher Baca ("Baca"), who is a waiter at the Restaurant, received a voice message from Dusenbery, which stated: "Yeah hi this is Finn Dusenbery, an attorney for Joseph Pagan. Um, we represent Mr. Pagan against CI Lobster Corp. If you could just give me a call whenever you have a chance, my number is 6074371168, 6074371168 thank you very much bye." (Baca Decl., ECF No. 38-5, ¶¶ 1, 30.) Baca also received phone calls from Dusenbery on March 29, 2021 and April 1, 2021. (*Id*. ¶ 32; *see also* Dusenbery Aff. ¶ 9.) Baca did not return any of these calls. (Baca Decl. ¶¶ 31, 33.)

On March 29, 2021, at 4:26 p.m., Laundel Booker ("Booker"), who also is a waiter at the Restaurant, received a text message from Pagan which stated: "Yo it's Joseph from lobster house. Let's get this money. Your gunna wanna hear this [winking smiley face emoji] Call me at anytime so I can put you on Joseph the Puerto Rican kid not jojo dumb ass[.]" (*See* Booker Decl., ECF No. 38-4, ¶¶ 1, 30-31.) Booker did not respond to this message. (*Id*. ¶ 32.) On the same date, at 5:29

2

p.m., Booker received a voice message from Dusenbery of the Ottinger Firm, which stated: "Yeah hi this is Finn Dusenbery, an attorney for Joseph Pagan. Um, we represent Mr. Pagan against CI Lobster Corp. If you could just give me a call whenever you have a chance, my number is 6074371168, 6074371168 thank you very much bye." (*Id*. ¶ 33; *see also* Dusenbery Aff. ¶ 9.) Booker did not return this call. (Booker Decl. ¶ 34.)

On April 1, 2021, at 8:46 p.m., Booker received a text message from Dusenbery, which stated: "Hi, this is Finn Dusenbery, I'm an attorney for Joseph Pagan against CI Lobster Corp. If you have a chance, please call me at 607-437-1168. Thanks." (Booker Decl. ¶¶ 35-36; *see also* Dusenbery Aff. ¶ 8.) Booker did not respond to this message. (Booker Decl. ¶ 37.) Booker also received other calls from Dusenbery (and from Pagan), but did not speak with them. (*See id*. ¶ 38.)

On April 1, 2021, at 8:43 p.m., Baca also received a text message from Dusenbery, which stated: "Hi, this is Finn Dusenbery, I'm an attorney for Joseph Pagan against CI Lobster Corp. If you have a chance, please call me at 607-437-1168. Thanks." (Baca Decl. ¶¶ 34-35; *see also* Dusenbery Aff. ¶ 8.) Baca informed Dusenbery that he "did not want to get involved in anybody's lawsuit and to not contact [him] anymore." (Baca Decl. ¶ 36.)

On May 12, 2021, this action was referred to me for general pretrial purposes. (Order of Reference, ECF No. 33.) On June 10, 2021, an initial pretrial conference was held before me, following which a case management plan was entered, containing a briefing schedule for Defendants' anticipated motion to disqualify. (*See* Case Mgt. Plan, ECF No. 36, at 5.) On June 24, 2021, Defendants filed the pending motion to disqualify the Ottinger Firm. (*See* Defs.' Not. of Mot., ECF No. 37.) On July 8, 2021, Plaintiff's counsel filed opposition papers. (*See* Pl.'s Mem.,

3

ECF No. 41; Dusenbery Aff.) On July 16, 2021, Defendants filed their reply memorandum.[3] (See Defs.' Reply, ECF No. 43.)

## LEGAL STANDARDS

"Generally, disqualification motions are disfavored, as they 'are often interposed for tactical reasons, and . . . even when made in the best of faith, such motions inevitably cause delay.'" *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 281 (S.D.N.Y. 2011) (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791-92 (2d Cir. 1983)). "Accordingly, such motions are 'subjected to a high standard of proof.'" *Id.* (citing *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 207 (S.D.N.Y. 2009)).

> In deciding disqualification motions, a court balances a client's right freely to choose his counsel against the need to maintain the highest standards of the profession. Although decisions on disqualification motions often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules, such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification.

*Copantitla*, 788 F. Supp. 2d at 281 (citations, brackets & internal quotation marks omitted).

Disqualification motions "are 'committed to the sound discretion of the district court.'" *Reyes v. Golden Krust Caribbean Bakery, Inc.*, No. 15-CV-07127 (DF), 2016 WL 4708953, at *8 (S.D.N.Y. Sept. 1, 2016) (quoting *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994)).

## DISCUSSION

Defendants assert two bases for disqualification that are discussed in turn: (1) alleged improper solicitation and (2) conflict of interest. (*See* Defs.' Mem. at 9-16.)

---

[3] Due to a problem with the Court's ECF system, Defendants were unable to file their reply memorandum on the July 15 due date.

4

I.  **<u>No Improper Solicitation</u>**

Defendants assert that the Ottinger Firm violated New York Rule of Professional Conduct ("RPC") 7.3. (*See* Defs.' Mem. at 9-13.) RPC 7.3 provides in relevant part: "A lawyer shall not engage in solicitation . . . by in-person or telephone contact, or by real-time or interactive computer-accessed communication unless the recipient is a close friend, relative, former client or existing client." NYRPC 7.3(a)(1). Here, all the record establishes is that the Ottinger Firm contacted Baca and Booker and sought to speak with them. However, there is no prohibition against Plaintiff's counsel seeking to interview witnesses, such as other waiters at the Restaurant (which would include Baca and Booker). Indeed, as noted in a New York state court decision relied upon by Defendants (*see* Defs.' Mem. at 10), "private interviews of fact witnesses . . . have the potential to streamline discovery and foster the prompt resolution of claims." *Rivera v. Lutheran Med. Ctr.*, 22 Misc. 3d 178, 184 (Sup. Ct. Kings Cnty. 2008), *aff'd*, 73 A.D.3d 891 (2d Dep't 2010) (internal citation omitted).

There is no writing or other evidence that contains any solicitation by the Ottinger Firm. It is undisputed that Dusenbery of the Ottinger Firm never spoke with Booker or Baca and therefore could not possibly have solicited them during any oral conversation. Although Booker and Baca both state in their declarations submitted with Defendants' disqualification motion, after having been "interviewed"[4] by defense counsel, that it was "clear" to them that Dusenbery's "purpose" in contacting them was to have them "join the lawsuit" (*see* Baca Decl. ¶ 47; Booker Decl. ¶ 50), their statements are speculative. Thus, the facts in this case stand in stark

---

[4] Defense counsel states that he "interviewed" these witnesses on June 14, 2021, the date their declarations were prepared (presumably by defense counsel). (*See* Kataev Decl. ¶ 8.) Defense counsel also refers to his interview of a third, unnamed witness. (*See id.* ¶¶ 8-10.)

5

contrast to the facts in the case relied upon by Defendants where plaintiff's counsel in writing and by voice message had sought to have defendants' employees join the pending lawsuit. *See Shibetti v. Z Rest., Diner & Lounge, Inc.*, No. 18-CV-00856 (BMC), 2021 WL 1738315, at *2 (E.D.N.Y. May 3, 2021).

Even though both Pagan and Dusenbery reached out to Booker within days of one another, and Pagan's March 29th text message to Booker made reference to "get[ting] this money" (*see* Booker Decl. ¶¶ 30-31),[5] Dusenbery, an attorney admitted to practice in this Court, states under oath that he contacted Booker and Baca "for the purpose of gathering information and interviewing witnesses" and that he never "indicated that [he] was soliciting their participation in this litigation." (*See* Dusenbery Aff. ¶¶ 9-10.) Accordingly, Defendants have not established, let alone by the high burden required for a disqualification motion, that the Ottinger Firm engaged in any solicitation.

II. **No Conflict Of Interest**

Defendants also assert that the Ottinger Firm violated RPC 1.7(a). (*See* Defs.' Mem. at 14-16.) "Rule 1.7 of the New York Rules of Professional Conduct . . . states in pertinent part that 'a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests[.]'" *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 208 (S.D.N.Y. 2009) (quoting NYRPC 1.7(a)(1)).

In substance, Defendants argue that there is a conflict of interest disqualifying the Ottinger Firm from representing Pagan because of the Ottinger Firm's unwillingness to settle this

---

[5] There is no evidence that Dusenbery had any role in this text message being sent. However, as set forth below (*see* footnote 7, *infra*), the Court will permit inquiry regarding this text message at Pagan's deposition.

6

case on an individual basis on behalf of Pagan, rather than on a class or collective basis on behalf of other employees of the Restaurant in addition to Pagan, thereby creating differing interests between Pagan and the others employees. (*See* Defs.' Mem. at 14-16.) However, Defendants have failed to provide factual or legal support for their argument.

This case is no different from any other class or collective action where the named plaintiff must decide whether to continue in the action on behalf of others or accept a settlement for himself alone. Dusenbery, an attorney admitted to practice in this Court, has stated under oath that Pagan "agreed to litigate this case on a class and/or collective action basis and understands that the case will proceed on that basis." (Dusenbery Aff. ¶ 6.) Moreover, Pagan himself participated in the mediation and rejected Defendants' offer, as communicated to him by the mediator. (*See id*. ¶ 5.) It is Pagan's decision whether or not to settle,[6] and there are no facts to suggest that Pagan wishes to settle his individual claims alone and that the Ottinger Firm somehow is preventing him from doing so. Defendants have not sustained their high burden to establish a disqualifying conflict of interest.[7]

\*    \*    \*

As a final matter, Plaintiff requests in his opposition memorandum that the Court sanction Defendants, pursuant to 28 U.S.C. § 1927, and its inherent powers, for filing a frivolous motion. (*See* Pl.'s Mem. at 8-10.) The Court addresses this request below.

---

[6] *See* NYRPC Rule 1.2(a) ("A lawyer shall abide by a client's decision whether to settle a matter.").

[7] Defendants also argue that the Ottinger Firm violated RPC 1.4, arguing that the Ottinger Firm failed to promptly inform Pagan about material developments in the action. (*See* Defs.' Mem. at 14-15.) However, there is no factual basis in the motion record for this argument. Again, Pagan himself participated in the mediation and declined Defendants' settlement offer.

Title 28, United States Code, Section 1927, provides that: "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Imposition of a sanction under § 1927 requires a 'clear showing of bad faith.'" *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (citation omitted). "Like sanctions under § 1927, sanctions under the Court's inherent power require a finding of bad faith." *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Empls. & Rest. Empls. Int'l Union*, 212 F.R.D. 178, 220 (S.D.N.Y. 2003), *adhered to on reconsideration*, 2004 WL 1943099 (S.D.N.Y. Aug. 27, 2004). "[T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Oliveri*, 803 F.2d at 1273; *accord Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143-44 (2d Cir. 2012). "Whether a sanction should be imposed at all, and if so the form it should take, are questions that are vested in the sound discretion of the district judge." *Bagley v. Yale Univ.*, 315 F.R.D. 131, 153 (D. Conn. 2016), *as amended* (June 15, 2016) (Haight J.).

The Court, in its discretion, declines to award sanctions, since it does not find that the requisite bad faith has been shown. The Court finds that the juxtaposition of the ambiguous text message that Pagan sent to Booker on March 29, 2021 about "get[ting] the money" (*see* Booker Decl. ¶¶ 30-31) with the text message that Dusenbery sent to Booker three days later, on April 1, 2021 (*see* Booker Decl. ¶¶ 35-36), created a thin reed for Defendants to argue that Booker was being solicited. In other words, although the Defendants have not met their high burden for

8

disqualification, the timing of the two text messages takes Defendants' disqualification motion out of the realm of frivolousness.[8]

## CONCLUSION

For the foregoing reasons, Defendants' motion to disqualify the Ottinger Firm is DENIED.

**SO ORDERED.**

Dated: New York, New York
July 16, 2021

_____
STEWART D. AARON
United States Magistrate Judge

---

[8] The Court declines Defendants' request to hold an evidentiary hearing, as the Court finds no legal basis for such a hearing. Nevertheless, Defendants may ask Pagan at his deposition about the nature and purpose of the text message that Pagan sent to Booker on March 29, 2021, and whether the message was sent at the behest of Dusenbery. The Court, however, will not permit inquiries regarding any attorney-client communications between Pagan and Dusenbery regarding such text message after the message was sent.