UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOSEPH PAGAN,

                                      Plaintiff,

        -against-

C.I. LOBSTER CORP., JOSEPH MANDARINO,
RICHARD MANDARINO, and JOHN MANDARINO,

                                  Defendants.
-----------------------------------------------------------------X

Case No.: 1:20-cv-7349 (ALC) (SDA)

**DECLARATION OF**
**MARIE MANDARINO**

MARIE MANDARINO, pursuant to 28 U.S.C. § 1746, declares as follows:

1. Your declarant is bookkeeper of the Defendant C.I. Lobster Corp. (hereinafter "City Island Lobster House" or the "Restaurant").

2. I submit this declaration based upon my personal knowledge, or upon information and belief, which I believe it to be true.

3. My husband, Joseph Mandarino, has managed the Restaurant since June 2003.

**Joseph Pagan**

4. Joseph Pagan ("Pagan") worked at the Restaurant for approximately one year, when he was laid off, like many others, due to the coronavirus pandemic. Like all restaurants, the Restaurant has been near the brink of bankruptcy since the pandemic began. We have struggled to continue to operate so that our employees (who we treat like our own family) can financially support themselves during these challenging times. We are the very definition of a mom-and-pop restaurant.

5. As this Court is aware, I learned that Pagan's attorneys were improperly soliciting employees of the Restaurant to join this lawsuit.

6. As a result, it is my understanding that my attorneys made a motion to disqualify Pagan's attorneys and other related relief.

7. In preparing for the motion to disqualify in June 2021, my attorneys and I sought declarations from employees of the Restaurant, including Christopher Baca ("Baca"), Laundel Booker ("Booker"), and Anthony D'Agostino ("D'Agostino").

8. All three (3) of the aforementioned employees willingly provided declarations following either a meeting or a telephone conversation with me and my attorneys.

9. However, after D'Agostino signed and provided me with his declaration, he begged and pleaded with me not to submit his signed declaration to this Court. D'Agostino told me then that Pagan owes him money, and that if Pagan saw this declaration against him, he would not be paid. Moreover, D'Agostino stated that he was scared of Pagan and did not want to be involved.

10. After consultation with my counsel, we respected D'Agostino's wish and did not submit his declaration to the Court. In fact, my attorney wrote in his declaration that:

> The third witness signed a declaration similar to that of Laundel Booker and Christopher Baca, but subsequently requested that his declaration not be submitted due to fear of retaliation by the Plaintiff. Specifically, the third witness expressed fears for his safety if the Plaintiff learns that he submitted the instant affidavit as well as other forms of reprisal.

See Docket Entry 38 at ¶¶ 9-10.

11. At that time, in or about June 2021, I did not have any additional information as to why D'Agostino was afraid of Pagan. I simply respected D'Agostino's wish as an employee of the Restaurant and a member of the City Island Lobster House family.

**Pagan's Criminal Activity at the Restaurant**

12. During the pendency of this action, I have regularly spoken with other business owners on City Island about both the status and the cost of this litigation.

13. I was discussing this case with one of the other owners of a restaurant on City Island – Michelle Debitetto, who owns The Crab Shanty – and I happened to mention that Pagan was suing the Restaurant.

14. Ms. Debitetto told me that upon information and belief, Pagan apparently had past due child support in the amount of over $60,000.00.

15. I asked Ms. Debitetto whether she would be willing to assist me as a witness in this case and she refused because she is scared that Pagan will sue her.

16. In discussing this issue with other employees at the Restaurant around January 2022, I learned for the first time that Pagan was actually selling drugs while working at the Restaurant, during working hours.

17. However, I did not know that this information was in any way relevant to Pagan's case against the Restaurant. As a result, I did not tell my attorneys about it until later.

18. After I learned about the issue with the drugs, I wanted to speak to D'Agostino again. However, I could not reach him by phone. As a result, I called D'Agostino's brother,[1] who informed me that Pagan had pulled a gun on D'Agostino after he demanded that Pagan return money he lent to him.

19. After a March 9, 2022 telephonic court conference in this case, my attorneys reached out to me to request a meeting to discuss conditional certification of a collective action and settlement.

---

[1] D'Agostino and his brother were both employees at restaurants my husband previously managed. Our family has known theirs for over thirty (30) years.

3

20. I was informed by my attorneys that we were required to make a written settlement offer to the Plaintiff because this Court ordered to us to do so.

21. As a result, I met with my attorneys on March 16, 2022 to discuss these issues.

22. It was at that time that I first informed my attorneys that I recently learned about Pagan selling drugs at the Restaurant and about pulling a gun on D'Agostino.

23. I was then informed that the aforementioned facts can form the basis a potential claim for a violation of New York's faithless servant doctrine.

24. After complying with this Court's Order concerning settlement, my attorneys then prepared and submitted a letter to this Court regarding these faithless servant issues.

25. On March 31, 2022, my attorneys sent me a copy of the Order requiring the Restaurant to file a sworn affidavit or declaration regarding these issues.

26. All of these employees were initially scared to get involved and to provide a declaration, but nonetheless did so because they said it was the right thing to do, and that they wanted to stand up for the Restaurant, myself, and my husband.

27. In fact, I asked numerous other employees to provide declarations after they told me that Pagan did, in fact, sell drugs at the Restaurant. However, these other employees begged and pleaded not to be involved in this case. In fact, many of them stated that Pagan carries a gun on him, that they greatly fear for their lives, and that Pagan knows where they live.

28. On or about March 31, 2022, I called Michael D'Agostino, D'Agostino's brother, directly, because I knew that D'Agostino would not answer or return my calls.

29. His brother indicated that D'Agostino stated in no uncertain terms that he would not come to court to testify about what happened nor would he provide a declaration.

30. The next day, I called D'Agostino with my attorney and asked him to reconsider, to come forward, do the right thing, and that there were options to protect him against Pagan.

31. However, D'Agostino refused and said that even if he were to get an Order of Protection against Pagan, he would still be subject to physical harm by what he referred to as Pagan's "goons."

32. D'Agostino also stated that the only way he would come forward to testify was if he went into the "witness protection program."

33. In refusing to come forward, D'Agostino specifically told me and my attorney words to the effect of:

    a. "I love you, Marie, and I would do anything for you, except this;"

    b. "I would rather be alive than dead;'

    c. "I know that Pagan has goons who are willing to go out and hurt me or do something worse;" and

    d. "Pagan is a loose cannon and capable of doing anything."

34. Moreover, in the past D'Agostino worked at the Restaurant full-time.

35. D'Agostino previously told me that he would likely return to work this Summer.

36. However, during our call, he specifically stated that he will <u>not</u> return to work because of Pagan and his fear of him.

37. Due to his unwillingness to appear willingly, I authorized my counsel to have D'Agostino served with a subpoena to require his attendance at the April 15, 2022 court conference in this matter.

38. Unfortunately, D'Agostino moved from his last known address, and despite searching public records for his new address and attempting service at two other addresses, D'Agostino was not able to be served.

39. It is not fair or right that I cannot have witnesses to defend myself because the Plaintiff engages in witness tampering and other efforts to take away the ability of my husband and I to defend this case.

40. Pagan should be willing to settle this case without a class or collective action because he apparently has more than $60,000.00 of past due child support. My attorneys have explained to me that litigating this case on a collective or class wide basis could take years.

41. I have read and understand this Declaration, affirm that the statements contained herein are true and based on my own personal knowledge, or that upon information and belief, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 5, 2022.

*Marie Mandarino*
Marie Mandarino (Apr 5, 2022 16:21 EDT)

Marie Mandarino