# OTTINGER
## EMPLOYMENT LAWYERS

401 Park Avenue South
New York, NY 10016
(212) 571-2000

535 Mission Street, 14th Fl.
San Francisco, CA 94105
(415) 262-0096

Finn Dusenbery
finn@ottingerlaw.com

OTTINGERLAW.COM

July 22, 2022

**VIA ECF AND E-MAIL**

Hon. Andrew Carter
U.S. District Judge
U.S. District Court
40 Foley Square
New York, NY 10007

> Re:    **Pagan, et al. v. C.I. Lobster Corp., et al.**
>        **No. 20-cv-7349 (ALC)**

Dear Judge Carter:

We represent Plaintiff Joseph Pagan in the above-referenced matter. The parties have reached a settlement, and their executed settlement agreement is annexed hereto as Exhibit 1. I submit this letter to respectfully request that the Court approve the settlement as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and so-order the parties' stipulation of dismissal.

By way of background, Plaintiff alleged the following: Plaintiff worked as a server from approximately March 2019 to March 17, 2020. Defendants paid Plaintiff at the rate of $10 per hour. During the summer season (from around late March to September), Plaintiff generally worked approximately five (5) shifts per week, three weekdays per week and on Saturday and Sunday. On Saturdays during the summer season, Plaintiff generally worked from around 10 a.m. to 1 a.m. and on Sundays during the summer season, Plaintiff generally worked from around 10 a.m. to midnight. On weekdays during the summer season, Plaintiff generally worked from around 1 p.m. to 9:30 p.m. During the summer season, Plaintiff generally worked a total of approximately fifty-four and a half (54.5) hours per week. During the rest of the year, Plaintiff generally worked approximately five (5) shifts per week, from around 5 p.m. to midnight or 1 a.m., for a total of approximately thirty-five to forty (35-40) hours per week. Defendant did not pay Plaintiff for all hours worked, and Plaintiff estimates that he was not paid for approximately twenty-four and a half (24.5) hours per week during the summer season and twenty (20) hours per week during the rest of the year. Lastly, Plaintiff alleges that Defendants unlawfully retained tips from Plaintiff, as they did not provide proper written notice of the tip credit, required Plaintiff to share tips with a tip-ineligible employee, Defendant Richard Mandarino, who prepared salads, did not provide customer service, and had the power to hire and fire employees.

Plaintiff has alleged that Defendants (1) failed to pay him for minimum wage and overtime, in violation of the FLSA, 29 U.S.C. §§ 206, 207, and New York law, N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-1.2, 1.4; (2) failed to provide the wage notice and statements required under

N.Y. Lab. L. §§ 195(1) and (3); and (3) failed to pay a spread of hours premium, in violation of N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6; and illegal deductions from gratuities, in violation of N.Y. Lab. L. § 196-d.  *See Fermin*, 93 F. Supp.3d 19, 39 (E.D.N.Y. 2015) ("Thus, an employer loses its entitlement to the tip credit when it requires tipped employees to share tips with (1) employees who do not provide direct customer service or (2) managers.") *quoting Shahriar v. Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d 234, 240 (2d Cir. 2011); *Yu G. Ke*, 595 F. Supp. 2d 240 (S.D.N.Y. 2008).

Under *Cheeks*, a court must determine whether an FLSA settlement is fair and reasonable. Relevant factors include:

> (1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faces by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted).  In light of the purpose of the FLSA, a court may also consider

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstances will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Id*. at 336 (internal quotation marks omitted). Applying these factors, the parties' settlement is fair and reasonable and should be approved.

As set forth in the settlement agreement, the parties have agreed to settle this action for a total payment of $75,000. This is an eminently fair settlement amount in light of Plaintiff's damages and the risks of the case.

Plaintiff's unpaid minimum wage and overtime compensation total, at most, roughly $25,530. Plaintiff estimates his spread of hours damages are up to approximately $720 and unlawfully retained tips are approximately $3,020. Damages for Plaintiff's N.Y. Lab. L. § 195 claims total $10,000. Plaintiff could also recover approximately $29,270 as double liquidated damages on his minimum wage, overtime, spread of hours, and unlawfully retained tips claims.

However, Plaintiff faces risks, as Defendants make the following arguments. Defendants dispute that Plaintiff was not paid for all of his hours worked.  In an off-the-clock case such as this one, Plaintiff will have to rely on testimony and a jury may credit Defendants over Plaintiff. Further, Defendants argue that Plaintiff has not alleged a federal minimum wage or overtime claim

on the ground that they have not identified a single week in which Plaintiff was not paid overtime and Plaintiff was paid in excess of federal minimum wage for hours below forty (40) per week.

The specific grounds for Defendants' argument that Plaintiff's claims must be dismissed are set forth in Defendants' motion for judgment on the pleadings.  See ECF Docket Entry 116.

The settlement will allow all parties to avoid the further burdens and expenses in establishing their claims and defenses. The parties would have been required to complete class-wide paper discovery – as Defendants were in the process of producing additional class-wide time and pay records prior to the parties reaching a settlement in principle – and depositions. There would also almost certainly be motion practice, including a motion for conditional certification under the FLSA, class certification, as well as trial.

In addition, the settlement was reached through hard-fought and contentious negotiations. Accordingly, it is clear that the negotiations were both arm's length and free of fraud or collusion.

The settlement is also fair and reasonable in light of the purposes of the FLSA.  While there may be other employees situated similarly to the Plaintiff, the settlement does not affect their rights in any way; they are free to bring their own claims against Defendants. Moreover, the settlement is not confidential. While the settlement includes a non-disparagement clause, it is mutual and includes an exception for Plaintiff to make truthful statements about this case and good faith statements in litigation, administrative or legal proceedings.  See Ex. 1; Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, n. 65 (S.D.N.Y. 2015) (non-disparagement clause "must include a carve-out for truthful statements about Plaintiff's experience litigating their case."). Thus, Plaintiff may, if he wishes, discuss his FLSA claims with similarly situated employees.

Further, while there is a general release of claims, Plaintiff had previously asserted a gender/perceived sexual orientation and race discrimination claim in the initial complaint.  Further, the general release in the settlement is mutual.  See Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) ("[T]here is nothing inherently unfair about a release of claims in an FLSA settlement"). In addition, courts have routinely held the mutual general releases are permitted where the Plaintiff-employee no longer works for the Defendant-employers, as is the case here. See, e.g., Chun Lan Guan v. Long Is. Bus. Instute, Inc., No. 15-CIV.-2215 (CBA) (VMS), 2020 WL 1289517, at *3 (E.D.N.Y. Mar. 18, 2020) (Amon, J.) ("there is nothing inherently unfair about a release of claims in an FLSA settlement" and finding that the mutual releases of claims in the Settlement Agreements are fair and reasonable, and do not run afoul of the FLSA's purpose of preventing abuse by employers upon applying the Wolinsky factors); Burgos v. Northeast Logistics, Inc., No. 15-CIV.-6840 (CLP), 2018 WL 2376481, at *6 (E.D.N.Y. Apr. 26, 2018), report and recommendation adopted, No. 15-CIV.-6840 (CBA), 2018 WL 2376300 (E.D.N.Y. May 24, 2018) (finding that the release satisfies the two conditions under which some courts typically approve of mutual general releases, but requiring parties to revisit an aspect of the release which is asymmetrical in order to receive approval); see also Grullon v. Justin Pharmacy Inc., No. 1:20-CIV.-6122 (OTW), 2021 WL 76386, at *3 (S.D.N.Y. Jan. 8, 2021) (when the plaintiff is a former employee with no ongoing relationship with the employer, courts in this District have approved a general release, if the release is mutual) (citing Strauss v. Little Fish Corp., No. 1:19-CIV.-10158 (LJL), 2020 WL 4041511, at *5-6 (S.D.N.Y. July 17, 2020) ("Such

a broad mutual general release operates as a walk away provision: it permits each side to terminate their relationship entirely free from fear that the other will re-engage in the form of a lawsuit.") (citing cases)); _Small v. Stellar Mgmt. Ltd._, No. 1:20-CIV.-2540 (SDA), 2020 WL 7890748, at *1 (S.D.N.Y. Oct. 21, 2020) ("In the present case, the Court finds that mutual general releases are acceptable because Plaintiff no longer works for Defendant; Plaintiff was represented by experienced counsel; and the release, although it extends to individual and entities other than Defendants, does so only to the extent that such persons or entities are acting on behalf of or in privity with Defendants and to claims arising from their activities as such"); _Souffrant v. 14-15 Mertens Place Corp._, No. 19-CIV.-05482 (BCM), 2020 WL 1166231, at *3 (S.D.N.Y. Mar. 11, 2020) (approving agreement when modified to ensure releases extended only to those acting on behalf of or in privity with the parties and was limited to claims arising from actions taken in such capacities); _Khan v. Young Adult Inst., Inc._, No. 18-CIV.-2824 (HBP), 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018) ("General releases are permissible in FLSA settlements where plaintiff is no longer employed by defendants, the releases were negotiated by competent counsel for both sides and the releases are mutual.").

In light of the excellent recovery that this settlement provides Plaintiff, there are no policy reasons that warrant rejecting the settlement, and the settlement should be approved as fair and reasonable.

The settlement also provides for reasonable attorneys' fees and costs to Plaintiff's counsel. Under the settlement agreement, Plaintiff's counsel will receive $24,783.28 as attorneys' fees – or approximately one-third of the net settlement amount after deducting costs – plus $650 as reimbursement of costs.[1] In determining whether a fee is reasonable, a court considers "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." _Goldberger v. Integrated Res., Inc._, 209 F.3d 43, 50 (2d Cir. 2000) (internal quotation omitted; alteration in original).

Plaintiff's counsel's time and labor warrants the requested fee. Plaintiff's counsel drafted the complaint, served and responded to discovery, drafted a mediation statement and a damage estimate, participated in mediation, opposed a motion to disqualify counsel and a motion to set aside the order denying the motion to disqualify, drafted a motion for conditional certification under the FLSA, negotiated and revised the settlement agreement and made the instant request for settlement approval. In total, Plaintiff's counsel spent 307.7 hours on this action, as set forth in detail in the time records attached hereto as Exhibit 3, resulting in a lodestar of $93,600.

As set forth _supra_, Plaintiff faced a risk of loss based on disputed legal and factual issues. Moreover, Plaintiff's counsel took this case pursuant to a retainer agreement with the Plaintiff that stated that counsel would receive a percentage of the recovery only if Plaintiffs obtained a recovery. Accordingly, Plaintiff's counsel faced a risk of receiving little or no payment for their

---

[1] Plaintiffs' counsel seeks reimbursement of the following costs: $400 filing fee, $250 for service of prcoess, see Exhibit 2.

work depending on the outcome of the underlying claims. Thus, the magnitude, complexities, and risks of the litigation weigh in favor of approving the requested fee.

Plaintiff's counsel have extensive experience representing employees in wage and hour actions. Ottinger Firm, P.C. ("Ottinger Firm"). The Ottinger Firm is an employment law firm with offices in New York and San Francisco. We have been focusing on employment law since 1999 and have represented thousands of people over the years in various employment matters, including wage & hour class actions. Mr. Ottinger graduated from Loyola Law School and received a Juris Doctor in June 1991. Mr. Ottinger received a B.A. degree from East Stroudsburg University in 1986. Mr. Ottinger has over 20 years of legal practice experience since graduating from law school in 1991. Mr. Ottinger was admitted to practice in California in December 1991, and in New York in 1996. Mr. Ottinger began his career by clerking for Judge Robert M. Mallano of the California Superior Court in Los Angeles, California from December 1991 to 1993 and, from 1993 to 1995, working as a Deputy Attorney General for the California Department of Justice where he handled criminal appeals and trials. From 1995 to 1997, Mr. Ottinger worked as an Assistant Attorney General at the New York State Attorney General's Office where he handled employment and civil rights matters in federal court, including serving as lead trial counsel in over twelve federal jury trials involving civil rights and employment discrimination matters. Mr. Ottinger worked from 1997 through 1999 as an associate at the firm of Dienst & Serrins where he managed the firm's employment practice, represented plaintiffs in a wide range of employment matters, and served as lead trial counsel in 3 federal jury trials. Mr. Ottinger started the Ottinger Firm in 1999. At the Ottinger Firm, Mr. Ottinger served as lead counsel in over two hundred employment cases involving a wide range of legal claims, a role in which he continues to engage. Mr. Ottinger has handled Fair Labor Standards Act cases since 2008. The Ottinger Firm, in addition to this case, has handled numerous class actions involving wage and hour claims. The Ottinger Firm used a rate of $500 per hour for Mr. Ottinger, who billed 3.7 hours.

I have been an associate at The Ottinger Firm since around December 2019 and have nearly nine years of employment law experience. Previously, I worked for two employment law firms that primarily litigate wage and hour cases, including one firm that focuses almost exclusively on class/collective wage and hour litigation and brings national FLSA collective actions. Before then, I worked as a solo practitioner litigating both individual and class/collective wage and hour cases and handled all aspects of litigation. I graduated from Columbia University in 2008, where I won the Bunner Prize for the best senior thesis on American literature. Subsequently, I was awarded the highest scholarship at Brooklyn Law School and graduated in 2012. During law school, I was an intern for a U.S. Magistrate Judge in the Eastern District of New York. The Ottinger Firm used a rate of $350 per hour for me, and I billed 202.7 hours. *Carrasco v. West Village Ritz Corp.*, Case No. 11-cv-7843, 2012 U.S. Dist. LEXIS95596, 2012 WL 2814112, at *7 (S.D.N.Y. July 11, 2012)("Courts in this [d]istrict have determined in recent cases that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450.").

Brian Walker Graduated from the Boston University School of Law in May of 2011, after receiving his B.A. from the University of California, Irvine in 2008. Mr. Walker has worked at multiple boutique law firms focusing on construction law, and related employment regulations, and also served as in house counsel to a large construction and infrastructure firm. Mr. Walker has over five years of experience as an attorney, including experience in employment law, multiparty

disputes, mediation, trial, and other pre and post-litigation matters. Ottinger Firm used a rate of $300 per hour for Mr. Walker, who billed 41.6 hours.

Zarrina Ozari is an attorney who was previously employed with the Ottinger Firm, P.C. and was admitted to practice in New York in January 2019. Ms. Ozari graduated from George Washington University Law School. Ottinger Firm used a rate of $200 per hour for Ms. Ozari, who billed 11.5 hours.

Jolen Medwid is a paralegal and has over 16 years of experience as a paralegal in various areas of law, with a primary focus on employment law over the last 9 years. Jolen has assisted with arbitrations, wage and hour class actions, discrimination/harassment/retaliation lawsuits, negotiations of various employment agreements, charges filed with the EEOC and other state agencies, and National Labor Relations Act charges and union grievances. Jolen has worked with the Ottinger Firm, P.C. since June of 2021. Ottinger Firm used a rate of $125 per hour for Ms. Medwid, who billed 14.3 hours.

Jacqueline Graves is a paralegal that was formerly employed with the Ottinger Law Firm. Ms. Graves graduated from the University of California, Davis in 2020 with a 3.89 GPA. At UC Davis, she earned Phi Beta Kappa Honors and played on the Division 1 Indoor and Beach Volleyball teams. Ms. Graves has worked as a paralegal focusing on employment law related matters for one year. She is attending Emory University School of Law.  Ottinger Firm used a rate of $125 per hour for Ms. Graves, who billed 12.1 hours.

Tim Hansen is a paralegal at The Ottinger Firm, P.C. Mr. Hansen has over five years of experience spanning across multiple practice areas including family law, intellectual property litigation, personal injury, and employment law. In 2018, Mr. Hansen graduated from Regent University, magna cum laude, with a Bachelor of Science in Paralegal Studies. Mr. Hansen has worked as a paralegal focusing on employment law related matters for nine months. Ottinger Firm used a rate of $125 per hour for Mr. Hansen, who billed 21.8 hours.

 Thus, the quality of representation weighs in favor of approving the requested fee.

Here, the requested fee is reasonable in relation to the settlement. The settlement agreement provides for a fee and costs of $25,433.28 (approximately one-third of the settlement amount after deducting costs, or $24,783.28, plus costs of $650). The proposed fee was consensual and agreed to by Plaintiff. Under the Plaintiff's contingency fee engagement agreement, Plaintiff's counsel is entitled to request out of the total recovery one-third in attorneys' fees after deducting costs and recovery of costs. *See Mireku v. Red Vision Sys., Inc.*, No. 11 Civ. 9671, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (noting the consensual nature of the fee arrangement); *see also Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit."). Plaintiff signed the settlement agreement, which provides for the $25,433.28. While there is no strict limit on the proportion of a settlement that may be allocated to attorneys' fees in FLSA cases, *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 604-605 (2d Cir. 2020), "[c]ontingency fees of one-third in FLSA cases are routinely approved in this Circuit." *Martinez*

7/22/22
Page 7 of 7

*v. Consulate Gen. of Algeria in N.Y.*, No. 16 Civ. 2390, 2016 U.S. Dist. LEXIS 157999, at *8-9 (S.D.N.Y. Nov. 15, 2016); *see also*, *e.g.*, *Geskina v. Admore Air Conditioning Corp.*, No. 16 Civ. 3096, 2017 U.S. Dist. LEXIS 67583, at *8-9 (S.D.N.Y. May 3, 2017); *Ramirez v. Greenside Corp.*, No. 16 CV 726, 2017 U.S. Dist. LEXIS 30527, at *9-10 (S.D.N.Y. Mar. 3, 2017); *Maldonado v. Srour*, No. 13 Civ. 5856, 2016 U.S. Dist. LEXIS 139881, at *3 (E.D.N.Y. Oct. 6, 2016); *Garcia v. Atlantico Bakery Corp.*, No. 13 Civ. 1904, 2016 U.S. Dist. LEXIS 84631, at *3-4 (S.D.N.Y. June 29, 2016).

Finally, the FLSA is a remedial statute designed to protect employees from unfair labor practices. 29 U.S.C. § 202(a). A fair attorneys' fee award that takes into account the services provided and the risks undertaken furthers these remedial purposes. For the reasons set forth about, we respectfully request that the Court approve the attorneys' fees and costs set forth in the settlement agreement.

Respectfully submitted,

/s/ Finn W. Dusenbery
Finn W. Dusenbery

cc: All Counsel (via ECF)